```
                                                          FILED
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION              98 AUG 25 AM 8:54

                                                  U.S. DISTRICT COURT
                                                   N.D. OF ALABAMA
```

JUDI LINDSAY,              }
                           }
    Plaintiff          }
                           }    CIVIL ACTION NO.
vs.                        }
                           }    CV-97-AR-273-S
DAVID'S BRIDAL,            }
                           }                    ENTERED
    Defendant          }
                                                AUG 25 1998

**MEMORANDUM OPINION**

Presently before the court is a motion for summary judgment by the defendant, David's Bridal ("David's"). Also before the court are several discovery and pre-trial related motions to strike by plaintiff, Judi Lindsay ("Lindsay"). Lindsay sues David's for alleged pregnancy discrimination. *See* 42 U.S.C. § 2000e, *et seq.* Because there is no genuine dispute as to any material issue of fact, summary judgment for David's will be granted.

**I. SUMMARY JUDGMENT STANDARD**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c).

**II. FACTS**

In June 1995, Lindsay began working as a manager for David's

in its Birmingham, Alabama store. Prospective employees must complete David's "Application for Employment," which requests disclosure of the applicant's "last four employers." *Pl.'s Ex. 1*. Lindsay completed this application, but admittedly failed to disclose two of her last four employers: "Victoria's Secret," where she worked for one day, and "Things Remembered." *See id.; Pl.'s Ex.* 2 at pp. 35 - 37, 42 - 43, 109 - 10. Applicants who make "any false ... representation" on the application are subject to discharge. *Pl.'s Ex. 1*.

David's discovered the falsifications after Maureen Clarke ("Clarke") took over as Lindsay's district manager. *See Doc.* 18 at ¶ 6. Clarke was scheduled to meet Lindsay for the first time on September 20, 1995. Before Clarke arrived, Lindsay, who was pregnant, began cramping and left the store to visit her physician. Lindsay left a message with her assistant manager for Clarke, and Lindsay left a note for Clarke apologizing for the absence and explaining the circumstances. After Lindsay's physician recommend that she refrain from returning to work for the rest of the day, Lindsay telephoned the store and spoke with her assistant manager. Lindsay explained her physician's advice. When Lindsay and Clarke met on September 21, Clarke explained that she had talked to the other employees at the store, and she began to criticize Lindsay: 1) for absenteeism, 2) for exhibiting

2

poor leadership abilities, and 3) for having "demotivated" employees. *Pl.'s Ex.* 2 at pp. 130, 132, 128. Clarke testified that "[t]he staff situation was very unhappy, morale was terrible. They had no leadership in the store. It caused [Clarke] to question how this person could have been a manager, because she was not displaying management ability." *Pl.'s Ex.* 6 at p. 107.

Because of the alleged management problems, Clarke decided to check Lindsay's job application and employment background. From conversations with David's employees, Clarke discovered what appeared to be several omissions from Lindsay's application, including past employment with "Things Remembered," "Victoria's Secret," and "Lane Bryant." *Id.* at pg. 109. Clarke also discovered that Lindsay had purportedly accepted a position with Disney, but failed to show up for her first day of work. *Id.* at 110 - 12. At the time Clarke discovered these potential discrepancies, David's was only able to verify Lindsay's prior employment at "Things Remembered." *Pl.'s Ex.* 4 at pg. 28. Given this confirmation, along with the information she had received from Lindsay's staff, Clarke terminated Lindsay on September 22, 1995. Lindsay admits that she was informed that she was being terminated for falsifying her job application. *Id.* at pp. 19 - 21. Prior to this incident Lindsay claims that one upper level

3

manager expressed concern about Lindsay's pregnancy given the heavy lifting required at the store and the "emotionality that came along with being pregnant." *Id.* at pp. 87 - 88. Lindsay never worked for "Lane Bryant" and denies accepting a position with Disney. *Pl.'s Ex.* 2 at pp. 45 - 57.

### III. ANALYSIS

Lindsay alleges that David's terminated her because she was pregnant. However, David's asserts that it terminated Lindsay because she falsified her employment application. Even though Lindsay claims that she did no act with intent to deceive, *id.* at pp. 109 - 10, her deposition testimony shows that she failed to disclose her employment at "Things Remembered" and "Victoria's Secret." David's presents evidence regarding its largely female work force and the number of employees who have taken maternity leave and returned to work. Such evidence is not compelling. However, what is compelling is David's evidence regarding equal treatment of employees who falsified employment records. In 1997, David's terminated Gina Peacock, a non-pregnant salesperson for falsifying her job application. *Doc.* 18, Ex. B at ¶ 2. In September 1996, David's rescinded an offer of employment to a non-pregnant woman, Beth Jacobs, after discovering she falsified her job application. *Id.* at ¶ 3.

4

Lindsay has failed to produce any evidence suggesting that David's discriminatorily enforced its termination policy as it relates to job application falsification. Instead, Lindsay relies on innuendo to suggest that the decision maker in these cases may have differed from the decision maker in Lindsay's case. Innuendo does not create a genuine issue of material fact.

Next, Lindsay attempts to create a genuine issue of material fact by providing evidence that David's may have discriminatorily performed a post-hire verification of her application. In December 1996, David's verbally disciplined Melanie Sanford ("Sanford"), an assistant manager at the Birmingham store, for poor customer service and for lacking leadership skills, which resulted in low production. *Pl.'s Ex.* 13. In May 1997, David's disciplined Sanford, in writing, for the same reasons. Rather than to perform a post-hire verification of Sanford's job application, David's gave Sanford an additional thirty days to improve her performance. *Id.* Sanford's alleged management problems were the same or similar to the problems David's claims Lindsay experienced, albeit Sanford was not accused of absenteeism. Lindsay points out that nothing prompted David's to verify Sanford's job application, which lists only two previous employers. *See Pl.'s Ex.* 14.

5

Lindsay's attempt to show pretext fails because the circumstances surrounding the two cases are materially different in several respects. Sanford's supervisor was a store manager, Sheila Batizy, not Clarke who was a district manager and was Lindsay's supervisor. *See Pl.'s Ex.* 13. Furthermore, unlike the falsification policy, there is no evidence that David's maintains a company-wide policy which requires district managers to perform such a verification whenever a store manager appears to lack management skills. Thus, there is no reason to expect a district manager, besides Clarke, to perform a post-hire job verification when faced with a manager who displays inadequate management skills.

Lindsay next produces evidence that David's has provided some conflicting reasons for her termination. First, Clarke told Lindsay that the termination was for falsification of the job application. *Pl.'s Ex.* 2 at pp. 119 - 21. Then a David's attorney explained to the EEOC that the termination was because of falsification <u>and</u> poor performance. *Pl.'s Ex.* 12. Later, an attorney for David's responded to Lindsay's interrogatory requests by indicating that the termination was for falsification of the job application: "Charging party's performance was not satisfactory. However, that was not the reason that plaintiff was discharged." *Pl.'s Ex.* 10 at ¶ 1 - 2 (Pl.'s

Interrogatories); *Id.* at ¶ 1 - 2 (Def.'s Responses).

While it is true that David's has retreated from its position that it terminated Lindsay for poor job performance, David's has maintained, from the moment Clarke terminated Lindsay, that falsification of her job application was the reason for the termination. Not every discrepancy creates evidence of pretext. This is not a case where the primary reason upon which the employer relied to support its adverse job action surfaced only after the plaintiff pursued legal action. Lindsay simply has not met her burden under F.R.Civ.P. 56(c).

Finally, the court notes that Lindsay appears to complain about disparate treatment based upon marital status, rather than pregnancy. In Lindsay's deposition she explains why she alleges David's discriminated against her:

> And they [sic] were accusation that were untrue [regarding poor management skills], so it leads one to think of a reason someone would fabricate information on you. And I was concerned that <u>they did not want someone in their store</u>, a brand new store in a brand new town <u>who was pregnant and unmarried</u>, and they were grasping for anything they could find.

(emphasis supplied) *Doc.* 18, Ex. A at pg. 150. The logical inference to be drawn from such a statement is that Lindsay believed that David's would not have terminated her had she been

pregnant and <u>married</u>. Even if Lindsay could produce believable direct evidence to support her belief, she would not have a "slam dunk" case. In order to recover under the present circumstances, Lindsay would have to show that David's discriminated against female or black or white employees who were about to become parents out of wedlock. Any reluctance by David's to employee <u>persons</u>, without regard to an impermissible motive, who were about to become parents out of wedlock would not constitute discrimination for purposes of federal employment discrimination laws. Instead, such reluctance would constitute discrimination base upon marital status, which is not prohibited under these laws.

In any event, Lindsay has failed to create a genuine dispute as to any material issue of fact. Therefore summary judgment for David's is appropriate.

DONE this 25th day of August, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE